# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Civil Case Number:

Honorable United States District Court Judge:

PETER M. VUJIN,

      Plaintiff,

vs.

JENNIFER FALCONE, individually and in official capacity,
THE FLORIDA BAR, a subdivision and Agency of the State of Florida,
RUSSELL W. GALBUT, individually,
MONICA GORDO, State Court Judge, individually and in official capacity,
ERIC GRABOIS, individually,
ERIC J. GRABOIS, P.L, a Florida Company,
MICHAEL HIGER, solely in official capacity as the President of the Florida Bar,
MIRADOR 1200 CONDOMINIUM ASSOCIATION, INC., a Florida Corporation,
PEYTON BOLLIN, P.L., A Florida Company,
RONALD WOLFF, individually, AND
JOHN DOE, individually and in his official capacity as bailiff of the State of Florida.

## PLAINTIFF PETER M. VUJIN, ESQUIRE'S
## CIVIL RIGHTS COMPLAINT FOR DECLARATORY RELIEF,
## INJUNCTION AND DAMAGES
## UNDER TITLE 42 UNITED STATES CODE SECTIONS 1983 AND 1985

1. Plaintiff, PETER M. VUJIN, ESQ., an Officer of this Honorable Court, and a citizen of the United States, and a member of the Florida Bar, respectfully brings this Action for Declaratory Relief, Injunctive Relief, and Damages, against JENNIFER FALCONE, THE FLORIDA BAR, RUSSELL GALBUT, MONICA GORDO, JUDGE OF THE STATE OF FLORIDA, ERIC GRABOIS, ERIC GRABOIS, P.L., MICHAEL HIGER, officially and solely as the Honorable PRESIDENT OF THE FLORIDA BAR, MIRADOR 1200 CONDOMINIUM ASSOCIATION, INC., PEYTON BOLLIN, P.L., RONALD WOLFF, and JOHN DOE, bailiff of the State of Florida, Defendants, for

1

violations of Plaintiff's individual rights under the First, Fifth, Sixth and Eight Amendments to the Constitution of the United States, in violation of Title 42, United States Code, Sections 1983 and 1985; Articles 1, 3, 4, 9, 17 of the Constitution of the State of Florida; Section 784.011, Florida Statutes, 784.03, Florida Statutes, 784.048, Florida Statutes, 810.02, Florida Statutes, 810.08, Florida Statutes, 812.014, Florida Statutes, 815.06, Florida Statutes, 837.02, Florida Statutes, 837.012, Florida Statutes, 837.05, Florida Statutes, 874.05, Florida Statues, and section 895, Florida Statutes.

2. Jurisdiction of this Honorable Court is respectfully invoked in Equity, pursuant to Title 42 of the United States Code, Sections 1983 and 1985, respectively.   Furthermore, Jurisdiction of this Honorable Court is respectfully invoked pursuant to Title 28 of the United States Code, Sections 2201 and 2202, because this is a lawsuit for a Declaratory Judgment. Plaintiff politely seeks a declaration that the Defendants violated his civil rights under color of Law, and in addition, nefariously, maliciously and unlawfully conspired to violate his civil rights, and to obstruct Justice, under color of Law.

3. This is an action for $10,000,000.00USD in damages, and therefore satisfies the Jurisdictional requirement.

4. Venue is proper in this District under Title 28, United States Code, Section 1391, because all claims asserted arose in this District, and all the Defendants' acts, and conspiracies, occurred in Miami-Dade County, Florida.

5. Plaintiff PETER M. VUJIN, ESQ, is at all relevant times a resident of Miami-Dade County, State of Florida.

6. Defendant JENNIFER FALCONE is at all relevant times a resident of Miami-Dade County, State of Florida.

2

7. Defendant THE FLORIDA BAR is a subdivision of the State of Florida and is at all relevant times a resident of Miami-Dade County, Florida.

8. Defendant RUSSELL GALBUT is at all relevant times a resident of Miami-Dade County, State of Florida.

9. Defendant MONICA GORDO, is at all relevant times a resident of Miami-Dade County, and a Circuit Court Judge of the State of Florida.

10. Defendant ERIC GRABOIS is at all relevant times a resident of Miami-Dade County, State of Florida.

11. Defendant ERIC J. GRABOIS, P.L. is at all relevant times a resident of Miami-Dade County, State of Florida.

12. Defendant MICHAEL HIGER is at all relevant times a resident of Miami-Dade County, State of Florida, and sued herein solely and with greatest respect in his official capacity, as the head and President of the Defendant THE FLORIDA BAR.

13. Defendant MIRADOR 1200 CONDOMINIUM ASSOCIATION, INC., is at all relevant times a resident of Miami-Dade County, State of Florida.

14. Defendant PEYTON BOLIN, P.L., is at all relevant times a resident of Broward County, State of Florida.

15. Defendant RONALD WOLFF, is at all relevant times a resident of Miami-Dade County, and Broward County, State of Florida.

16. Defendant JOHN DOE, is at all relevant times a resident of Miami-Dade County, State of Florida, and works at the Miami-Dade County Courthouse as a bailiff.

17. All conditions precedent to the maintenance of this Action, including those set forth in Florida Statutes, Section 768.28, have been performed, have occurred prior to the filing of the Complaint, and have been waived by the State of Florida.

## FACTUAL ALLEGATIONS

18. On August 4th, 2008, Plaintiff obtained a Stipulation-Judgment for Fraud, pursuant to the statutory Offer of Judgment by Crescent Heights of America, Inc., and 1200 West Realty, LLC., in Vujin vs. Galbut, 2007-016810-CA-01 (Miami-Dade) against Crescent Heights of America, Inc., a corporation owned by the Defendant RUSSELL GALBUT and his alter ego, and against 1200 West Realty, LLC., a close-knit company owned by the Defendant RUSSELL GALBUT and his alter ego. Said Stipulation-Judgment is recorded in the Official Records Book 26513, Page 1621, Miami-Dade County Official Records. Please See "Exhibit A", respectfully attached.

19. Said Stipulation-Settlement is prima-facie evidence that the Defendant RUSSELL GALBUT is unlawfully operating Defendant MIRADOR 1200 CONDOMINIUM ASSOCIATION, Inc., because the fraudulent Declaration of Condominium illegally reserved 5 out of 9 seats of board members of the master-association, Mirador Master Association, Inc., to the relatives, agents and servants of Defendant RUSSELL GALBUT in perpetuity, in contravention of Florida Statutes Section 817.034, and Chapter 718, respectively.

20. On August 16th, 2008, Plaintiff obtained a Stipulation-Judgment for Fraud, pursuant to the statutory Offer of Settlement by 1100 West Properties, LLC., against 1100 West Properties, LLC., a close-knit company owned by the Defendant RUSSELL GALBUT

and his alter ego. Said Stipulation-Judgment is recorded in the Official Records Book 26576, Page 2611, Miami-Dade County Official Records.

21. Plaintiff represented several other clients against the aforementioned parties, and secured settlements in all his clients' cases.

22. Shortly thereafter, the Defendants commenced a campaign of stalking, harassing and persecution of the Plaintiff through numerous criminal acts, including, without limitation: Burglary, Attempted Burglary, Armed Kidnaping, Extortion, Fraud, Stalking, Trespass, Electronic Trespass, Perjury, Assault and Battery, among other crimes that the Plaintiff suffered.  Defendant RUSSELL GALBUT obviously ordered all such criminal acts to be committed against the Plaintiff. Please See Exhibit "B", Police Reports, respectfully attached hereto.

23. Defendant RUSSELL GALBUT is a State-actor, in that he is so intrinsically connected to the State of Florida, due to, among other things, the fact that he entered into preliminary negotiations with the State of Florida to build a new Miami-Dade Courthouse, leading one State Court Judge to question the appearance of impartiality for any parties damaged by Defendant RUSSELL GALBUT.   All other Defendants, except the Honorable MICHAEL HIGER, are also State-actors, as co-conspirators of Defendant RUSSELL GALBUT.

24. In late November, 2012, Plaintiff and his friend, Mr. Julio Gomez, were removed against their will from the Plaintiff's residence by Defendant RONALD WOLLF, allegedly ordered by Defendant RUSSELL GALBUT, under threat of a gun by a security guard dressed in Miami Police Department uniform, and employed by Defendant MIRADOR 1200 CONDOMINIUM ASSOCIATION, Inc., and forcibly led in mortal fear under

5

threat of deadly force to the lobby of the building.  Plaintiff called the Miami Beach Police Department, and the Sergeant in charge ordered Defendant RONALD WOLFF to cease and desist all criminal actions against the Plaintiff, and also cautioned RONALD WOLFF that any further contact with the Plaintiff will result in the arrest of RONALD WOLFF. The Sergeant in charge filed a Police Report with the Miami Beach Police Department, numbered: 2012-00118089.  Please See Exhibit "C", Affidavits of Witnesses, respectfully attached hereto.

25. In late November, 2013, Plaintiff's friend and roomate, present at the Plaintiff's residence filed a Police Report with the Miami Beach Police Department, numbered: 13-131638, for Attempted Burglary, allegedly committed by Defendant RONALD WOLFF. Please See Exhibit "B". At the time, Plaintiff VUJIN was absent on a short trip abroad.

26. In August 2015, obviously upon orders of Defendant RUSSELL GALBUT, Defendant RONALD WOLFF, then officer of the Defendant MIRADOR 1200 CONDOMINIUM, INC., forcefully pushed the Plaintiff and forced himself into the Plaintiff's condominium unit, thereby assaulting and battering the Plaintiff in front of several witnesses. Please See Exhibit "B".

27. On July 7th, 2014, without notice to the Plaintiff, Defendants ERIC GRABOIS, ERIC J. GRABOIS, P.L., and/or PEYTON BOLLIN, P.L., successfully but fraudulently reopened a case titled: Mirador Condominium Association, Inc. vs. Peter M. Vujin, numbered 2009-048623-CA01, that had been dismissed previously.  Said action for monetary damages is currently pending, despite the fact that the Plaintiff received a discharge in Bankruptcy in the Southern District of Florida on 6/09/2014.

28. In addition, Defendant PEYTON BOLIN, P.L., continues to unlawfully prosecute said action to foreclose its alleged lien, despite the fact that said lien was extinguished by operation of Law due to the fact that the superior lien holder foreclosed on the aforementioned property. Please See "Exhibit D", admission of party opponent.

29. In addition, Defendants ERIC GRABOIS, ERIC J. GRABOIS, P.L., and PEYTON BOLIN, P.L., allegedly ordered by Defendant RUSSELL GALBUT, filed and prosecuted, and continue to prosecute, the aforementioned Circuit Court action against the Plaintiff, to enforce a non-existent, unlawful debt through criminal racketeering, in that, Defendant MIRADOR 1200 CONDOMINIUM, INC., did not produce Audited Financial Statements as commanded and duty-bound by Chapter 718, Florida Statutes for at least 10 years, and as such, the Plaintiff owes Defendant MIRADOR 1200 CONDOMINIUM, INC., nothing. Nonetheless, the Plaintiff had to defend this racketeering lawsuit, and filed a Counterclaim, and thereby the Defendants caused the Plaintiff Damages, among other things. Furthermore, Defendant PEYTON BOLLIN, P.L., continues to unlawfully prosecute said lawsuit to foreclose its expired lien, with the sole purpose to harass, intimidate and illegally damage the Plaintiff. Please See Exhibit "D", emails from PEYTON BOLLIN, P.L., respectfully attached hereto.

30. In the aforementioned action, Mirador Condominium Association, Inc. vs. Peter M. Vujin, numbered 2009-048623-CA01, Defendant State Court Judge MONICA GORDO, maliciously, intentionally and with the intent to intimidate the Plaintiff and protect the other Defendants, struck certain allegations. Said allegations illustrated the crimes that the Defendants RUSSELL GALBUT, MIRADOR 1200 CONDOMINIUM, INC.,

RONALD WOLFF, ERIC GRABOIS, ERIC J. GRABOIS, P.L., and PEYTON BOLLIN, P.L. committed against the Plaintiff.

31. Furthermore, Defendant State Court Judge MONICA GORDO allegedly issued a non-judicial order to the Defendant JOHN DOE, a bailiff not assigned to her, to stalk, follow, batter and extrajudicially punish and intimidate the Plaintiff around the Miami-Dade County Courthouse, where the aforementioned bailiff JOHN DOE surreptitiously, intentionally and wilfully battered the Plaintiff from the back by way of attempting to pull the Plaintiff's jacket and shirt off, every time that the Plaintiff went to Court to represent himself in the action Mirador 1200 Condominium Association, Inc. vs. Peter M. Vujin, numbered 2009-048623-CA01, in 2015 and 2016.  The non-judicial order by Defendant MONICA GORDO was made with the malicious and unlawful intent to intimidate the Plaintiff from the prosecution of his Counterclaim, that would prove that Defendant MIRADOR 1200 CONDOMINIUM ASSOCIATION, INC., is an organized scheme to defraud, and with the intent to obstruct Justice.  Said non-judicial actions of Defendant MONICA GORDO constitute unlawful, cruel and unusual, extrajudicial punishment, designed to illegally advance the interests of the other Defendants, and are not covered by any immunity as not traditionally a function of a Judge of the State of Florida, and were done in absolute absence of Jurisdiction.

32. Defendant MONICA GORDO, as State Court Judge, is, as a matter of Law, not immune from a lawsuit for damages in this case because she acted in absence of any Jurisdiction and allegedly conspired with other defendants to commit unlawful acts when she ordered extrajudicial punishment of the Plaintiff, among other things. Defendant MONICA

GORDO, a State Court Judge, is also not immune from an action for a declaratory Judgment and Injunction.

33. Defendant PEYTON BOLLIN, P.L., obviously unlawfully advised, aided and abetted Defendant RONALD WOLFF, who, upon alleged orders of Defendant RUSSELL GALBUT, had the Plaintiff and his friend Mr. Julio Gomez effectively kidnaped under threat of a gun from the Plaintiff's residence, burgled the Plaintiff's residence, battered the Plaintiff, stalked and harassed the Plaintiff, and committed a plethora of other crimes, as aided and abetted by the Defendant PEYTON BOLLIN, P.L. Further, with the malicious and criminal intent to racketeer the Plaintiff, allegedly upon orders of Defendant RUSSELL GALBUT, Defendant PEYTON BOLLIN, P.L. filed, prosecuted and continues to prosecute a knowingly fraudulent Complaint in <u>Mirador 1200 Condominium Association, Inc. vs. Peter M. Vujin</u>, numbered 2009-048623-CA01, even though Defendant PEYTON BOLLIN, P.L., is aware that Defendant MIRADOR 1200 CONDOMINIUM ASSOCIATION, INC., never produced the Audited Financial Statements pursuant to Chapter 718, Florida Statutes, because said statements would show that Defendants RUSSELL GALBUT and RONALD WOLFF stole, and continue to steal, money and other property from the Defendant MIRADOR 1200 CONDOMINIUM, INC., in order to illegally racketeer the Plaintiff, and other condominium owners. Defendant PEYTON BOLLIN, P.L. is also aware that it is continuing to prosecute its foreclosure of lien lawsuit against the Plaintiff even though said lien expired by operation of Law. <u>Please See Exhibit "D"</u>.

34. Within one hour after Defendant RONALD WOLFF, a previous officer of Defendant MIRADOR 1200 CONDOMINIUM, INC., represented by Defendant ERIC J.

GRABOIS, P.L. in the aforementioned Circuit Court lawsuit against the Plaintiff, lost on a significant issue in 2016, he lay in wait in his automobile in order to ambush the Plaintiff when the Plaintiff returned home. Defendant ERIC GRABOIS or Defendant ERIC J. GRABOIS, P.L., upon information and belief, telephoned Defendant RONALD WOLFF and advised him to assault the Plaintiff with a deadly weapon, to wit, his car. Plaintiff saw Defendant RONALD WOLFF in his immediate vicinity as he crossed the pedestrian crosswalk, waiting in his car with the intent to run the Plaintiff down.  The Plaintiff felt extremely scared for his life and left the scene in a hurry.  Since that day, the Plaintiff lives in fear for his life.

35. Shortly thereafter, Defendant ERIC GRABOIS filed a perjurious, malicious, libelous and nonsensical Bar Complaint against the Plaintiff that does not state a cause of action, with the intent to harass, intimidate and prevent the Plaintiff from the prosecution of his Counterclaim in the aforementioned Circuit Court action, and thereby aid and abet the criminal actions of himself, and the other Defendants, and to disable the Plaintiff from representing similarly-situated condominium owners who are victims of the Defendants. Said Bar Complaint is currently pending in front of the Supreme Court of the State of Florida. Please See "Exhibit E", Grabois Bar Complaint.

36. Defendant JENNIFER FALCONE, attorney and agent for the Defendant THE FLORIDA BAR, with the malicious intent to intimidate, harass and obstruct the Plaintiff, and with the nefarious purpose to prevent the Plaintiff from representing similarly-situated victims of the Defendants, ignored her special duty as prosecutor and thereby lost her qualified immunity, allegedly agreed and conspired with the other Defendants to unlawfully prosecute the Plaintiff, filed a fraudulent, malicious, dissolute and incomprehensible Bar

Complaint that does not state a cause of action, whose essence are written and oral statements allegedly made by the Plaintiff in Court filings, and fraudulently induced the Court to enter Default without Notice of a Hearing or a Hearing, despite the fact that the Plaintiff filed his Notice to Defend on the Merits, Motion to Dismiss, and Motion for a More Definite Statement, before the entry of Default in the obviously sham proceeding maintained by Defendant THE FLORIDA BAR at the present.

37. In the alternative, immunity does not attach to the Defendant JENNIFER FALCONE because she is not a traditional, criminal prosecutor, just an agent of the Florida Bar.

38. Attorneys have the same rights in proceedings prosecuted by the Defendant THE FLORIDA BAR as any other pleader, to wit, once a pleader interposes his defenses in writing, as the Plaintiff did in the aforementioned matter, it is error to enter Default without a Notice of Hearing, and an actual Hearing.

39. Further, upon information and belief, Defendant JENNIFER FALCONE accepted a bribe, or was otherwise corruptly influenced and ordered by Defendant RUSSELL GALBUT, to unlawfully persecute the Plaintiff via the aforementioned sham Bar Complaint, with the nefarious purpose to deprive the Plaintiff of his civil rights and his Office of Attorney, and with the intent to obstruct Justice.

40. Defendant THE FLORIDA BAR, upon information and belief, accepted a bribe, or was otherwise corruptly influenced and ordered by Defendant RUSSELL GALBUT, to unlawfully persecute the Plaintiff via the aforementioned sham Bar Complaint, with the nefarious purpose to deprive the Plaintiff of his civil rights and his Office of Attorney, and with the intent to obstruct Justice.

41. Defendant JOHN DOE, unknown bailiff and employee of Miami-Dade County, unlawfully, intentionally and forcefully battered the Plaintiff, by grabbing the Plaintiff's jacket and shirt from the back several times, pursuant to the non-judicial order of Defendant MONICA GORDO, who herself, upon information and belief, was acting upon orders of Defendant RUSSELL GALBUT, in 2016.

42. All Defendants, except the Honorable MICHAEL HIGER, President of the Florida Bar, unlawfully and with a  depraved and nefarious intent, conspired and continue to conspire to do all of the aforementioned acts in order to illegally deprive Plaintiff of his civil rights and his Office of Attorney, in contravention of the Constitution of the United States, the Constitution of the State of Florida, and the relevant Statutes of the United States, and the State of Florida, as plead above.

43. Honorable MICHAEL HIGER, President of the Florida Bar, is named in this action in his official capacity only, for procedural reasons.  In the alternative, upon information and belief, the Plaintiff respectfully alleges that MICHAEL HAGER, as the President of the Florida Bar, has a duty to supervise Defendant THE FLORIDA BAR, but has negligently failed to do so.

44. Defendants have conspired, and continue to conspire, to deprive the Plaintiff, PETER M. VUJIN, ESQUIRE, of Due Process of Law, Equal Protection of the Laws, and Equal Privileges and Immunities guaranteed by the Constitution of the United States, and the Constitution of the State of Florida, and the relevant statutes, by force, intimidation, threats, sham proceedings, and other unlawful means, allegedly in order to obstruct Justice.

45. Defendants have acted in furtherance of the conspiracy and committed illegal overt acts and crimes that caused physical injury, severe emotional distress, psychological damages, loss of property, to wit, Plaintiff's previous condominium unit located at the premises of Defendant MIRADOR 1200 CONDOMINIUM, INC., and caused other damages to the Plaintiff who had to pay for doctors and attorneys due to the actions of the Defendants.

46. Defendants at all relevant times acted under color of Law of the State of Florida.

47. There exists an actual controversy between the Plaintiff and the Defendant as alleged in this Complaint.

48. This Action for Declaratory Judgment, Injunctive Relief, and Damages is the Plaintiff's only means of securing adequate relief for his injuries.

49. Defendant's actions, and threatened actions, present a threat or immediate and irreparable injury to the Plaintiff, and as such, warrant the exercise of this Honorable Court's Jurisdiction.

50. Plaintiff has suffered, is currently suffering, and will continue to suffer irreparable injury from the Defendants' unlawful conduct, as alleged in this Complaint, unless Defendants are enjoined by this Honorable Court.

51. All allegations that may be perceived as being against present Law, if any, are respectfully plead as a good faith effort to change the Law.

## **RELIEF REQUESTED**

**52.** Plaintiff respectfully requests a declaration that the Defendants have violated Plaintiff's Rights under the Constitution of the United States, the Constitution of the State of Florida, Statutes of the United States, and Statutes of the State of Florida.

53. Plaintiff respectfully requests a declaration that Defendants have conspired, and continue to conspire, to violate the Plaintiff's Rights under the Constitution of the United States, the Constitution of the State of Florida, Statutes of the United States, and Statutes of the State of Florida, in order to obstruct Justice.

54. Plaintiff respectfully request injunctive relief to restrain the Defendants from violating his civil rights, among others: to cease to deprive Plaintiff of the Due Process of Law; to cease from battering Plaintiff when he goes to the Miami-Dade County Courthouse; to cease from persecuting Plaintiff via fraudulent, malicious and abominable sham Bar Complaints that do not state a cause of action, to case from persecuting Plaintiff via said Bar Complaints with the purpose to deny Plaintiff's Free Speech Rights; to cease committing crimes against Plaintiff under color of Law; to cease scaring, harassing and intimidating premiere attorneys who are members of the Florida Bar who are now scared to represent Plaintiff; that attorneys have the same rights in Bar administrative proceedings as any other party, and for all other just relief.

55. Plaintiff respectfully requests monetary damages for the injuries that he suffered, where allowed by Law.

56. Plaintiff respectfully requests a Jury Trial on all issues so triable.

## JURY DEMAND

Plaintiff politely requests a Jury Trial in this cause, on all issues so triable.

## ALL OF WHICH IS RESPECTFULLY SUBMITED:

*/s/*

Peter M. Vujin, esquire
1200 West Avenue #824
Miami Beach, Florida, 33139
Officer of the Court No. 641243
petermvujinesq@gmail.com
786.899.3460

15

THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO.:  07-16810-CA (40)

PETER M.P. VUJIN, ESQ., an
individual,                                                    )
                                                                    )
                    Plaintiff,                               )
                                                                    )
vs.                                                              )
                                                                    )
LOUIS ZARETSKY, ESQ., an individual, )
AND CRESCENT HEIGHTS OF               )
AMERICA, INC., a Florida for Profit        )
Corporation, AND MIRADOR MASTER  )
ASSOCIATION, INC., a Florida Not for   )
profit Corporation, AND 1100 WEST      )
PROPERTIES, LLC, a Foreign Limited     )
Liability Co., AND JUAN BONFILL,         )
an individual, AND J. BONFILL &            )
ASSOCIATES, INC., a Florida for profit   )
Corporation, AND 1200 WEST REALTY,  )
LLC, a foreign Limited Liability              )
Company, AND EUROHYPO A G, NEW   )
YORK BRANCH, a Foreign Company,       )
                                                                    )
                    Defendants.                            )
                                                                    )
_____ )

## STIPULATION BETWEEN PLAINTIFF PETER M.P. VUJIN, INDIVIDUALLY, AND DEFENDANT CRESCENT HEIGHTS OF AMERICA, INC. AND DEFENDANT 1200 WEST REALTY, LLC FOR AN ORDER OF DISMISSAL WITH PREJUDICE AS TO THE ABOVE-NAMED DEFENDANTS ONLY

IT IS HEREBY STIPULATED and agreed pursuant to that certain

Acceptance of the Offer of Judgment, both attached hereto, solely between PETER M.P. VUJIN,

ESQ., as the individual Plaintiff, and CRESCENT HEIGHTS OF AMERICA, INC., and 1200

WEST REALTY, LLC, as the Offering Defendants, by and through undersigned counsel, that

584990v1

EXHIBIT "A" 1/2

Bk 26513 Pg 1621 CFN 20080643861 08/06/2008 18:38:41 Pg 1 of 2 Mia-Dade Cty, FL

this cause having been amicably settled, solely between PETER M.P. VUJIN, ESQ., as Plaintiff, and CRESCENT HEIGHTS OF AMERICA, INC., and 1200 WEST REALTY, LLC, as Offering Defendants, without admissions of any type by any party hereto, may be dismissed with prejudice to PETER M.P. VUJIN, ESQ., as Plaintiff, only against CRESCENT HEIGHTS OF AMERICA, INC., AND 1200 WEST REALTY, LLC, the parties to bear their own attorney's fees and costs.

DATED as a Stipulation this 31st day of July, 2008.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this _101_ day of _August_, 2008.

_____
GILL FREEMAN
Circuit Court Judge

**WE SO STIPULATE:**

For Plaintiff PETER VUJIN:

BY:_____
International Legal Consultants, PLLC
Albert L. Weintraub, Esq.
Florida Bar No.: 085851

BY:_____
International Legal Consultants, PLLC
Peter M.P. Vujin, Esq.
Florida Bar No.: 641243

For Defendants CRESCENT HEIGHTS
OF AMERICA, INC. and
1200 WEST REALTY, LLC:

BY:_____
Shook, Hardy & Bacon L.L.P.
Richard C. Smith, Esq.
Florida Bar No.: 139194

584990v1

2

EXHIBIT "A" 2/2

Bk 26513 Pg 1622 CFN 20080643861 08/06/2008 18:38:41 Pg 2 of 2 Mia-Dade Cty, FL

Requests for reports may be made by mail using the above address.
will be given out over the telephone in reference to the report.
time as to charges for copies of the report. No other information
verify that the report is available. Inquiry may also be made at this
process the report. It is suggested that you call (305)673-7990 to
Tuesday – Friday. It takes approximately five (5) working days to
Beach, Florida 33139. Hours of operation are 8AM to 3PM
Miami Beach Police Department, 1100 Washington Avenue, Miami
A copy of this report may be obtained from the Records Unit of the

**CASE REPORT INFORMATION**



## The Mission of The Miami Beach Police Department

*"Miami Beach law enforcement professionals
deliver policing excellence through proactive
services and interactions, providing a safe
environment to all who live, work, and
play in our vibrant, tropical,
historic community"*

## DRIVER EXCHANGE INFORMATION

Driver:_____
Address:_____
Owner:_____
Address:_____
Vehicle Year: _____ Make:_____ Model:_____
Tag Number: _____State:_____
Insurance Company:_____
Policy Number:_____

## MIAMI BEACH POLICE DEPARTMENT
(305) 673-7900

Officer: D. HAN
Metro ID#: 1019
Case Number: 2012-0011 8089
Type of Incident: Civil Dispute
Date Reported: 11-12-12
Address Occurred: 1200 West Ave.
Apt 523

☐ Beach Towing   1349 Dade Blvd.   (305) 534-2128
☐ Tremont Towing  1916 Bay Road   (305) 672-2395

EXHIBIT "B"

1/2

Requests for reports may be made by mail using the above address.
will be given out over the telephone in reference to the report.
time as to charges for copies of the report. No other information
verify that the report is available. Inquiry may also be made at this
process the report. It is suggested that you call (305)673-7990 to
Tuesday - Friday. It takes approximately five (5) working days to
Beach, Florida 33139. Hours of operation are 8AM to 3PM
Miami Beach Police Department, 1100 Washington Avenue, Miami
A copy of this report may be obtained from the Records Unit of the

**CASE REPORT INFORMATION**



## The Mission of The Miami Beach Police Department

*"Miami Beach law enforcement professionals
deliver policing excellence through proactive
services and interactions, providing a safe
environment to all who live, work, and
play in our vibrant, tropical,
historic community"*

## DRIVER EXCHANGE INFORMATION

Driver:_____
Address:_____
Owner:_____
Address:_____
Vehicle Year: _____ Make:_____ Model:_____
Tag Number: _____State:_____
Insurance Company:_____
Policy Number:_____

## MIAMI BEACH POLICE DEPARTMENT
(305) 673-7900

Officer:_____ _HANUG_
Metro ID#:_____ _1042_
Case Number:_____ _15-13168_
Type of Incident:_____ _BURGLARY ATT_
Date Reported:_____ _11/21/13_
Address Occurred:_____ _1200 WEST AVE_

EXHIBIT "B"

2/2

☐ Beach Towing  1349 Dade Blvd.  (305) 534-2128
☐ Tremont Towing  1916 Bay Road  (305) 672-2395

**STATE OF FLORIDA**
**IN THE CIRCUIT COURT, IN AND FOR MIAMI DADE COUNTY**

PETER M. VUJIN, ESQ.,

                                              Case Number:

      Petitioner,

vs.

RONALD R. WOLFF,

      Respondent.

_____ /

<u>AFFIDAVIT OF MS. JEVGENIJS MINAJEVS IN SUPPORT OF THE PETITIONER</u>

    **COMES NOW**, first being duly sworn, JEVGENIJS MINAJEVS, and hereby under penalty of Perjury, deposes as follows:

1) I am over 18 years of age, and I have personal knowledge of all the facts because I lived with Mr. Vujin.

2) I first moved into this building at 1200 West Avenue in 2009 and I have been approved by the association. I have no criminal record, or any judgments, never had any problems with the police or anyone else.

3) Ron Wolff has been harassing and threatening me ever since I moved into this building.

4) At the time, when I had a dispute with my landlord, Ron Wolff refused entry into my apartment to me. He instructed the concierge to chase me down the hallway, and they did, and I was forced to call law enforcement to regain entry to my unit.

5) When I returned to the building in 2013, and moved in with Mr. Vujin, Ron Wolff immediately started harassing me again.

6) Ron Wolff has been refusing me entry, and has instructed the concierge to deny me entry into my unit, and the concierge told me that he has been instructed by Ron Wolff not to let me in.

7) I have a lease with the landlord of the apartment and I have been paying my rent on time.

8) On 11/2/2013, as soon as Mr. Vujin left for a short trip abroad, I woke up as somebody was

EXHIBIT "C" 1/8

trying to break in, they were trying to break the door, but they were stopped by the latch.  I don't know who that was, but when I got up to open the door, there was no one there.  The banging was extremely loud and I was very scared and I called the Police and filed a police report.

9)  The policeman came and took down my report.  The policeman made an attempted burglary report.

10) Mr. Vujin complained to me that he has been threatened, harassed and stalked by Ron Wolff, and I have heard from other residents that Ron Wolff has been harassing other people, too.

11) Further, on August 14, 2014, Mr. Wolff interfered during the process of me and Mr. Vujin moving out, Mr. Wolff was harassing us and causing delays and being disrespectful and disruptive.

12) In front of two witnesses, I asked him the reason of harassment, the reason why he's been harassing me over the years, because I am simply a tenant who was a lease with the owner. Wolff replied in front of witnesses that "Because it is people like you who come to this country and commit all kinds of fraud."  He further said "Go pull this off in another building."  I was deeply offended by Wolff's hate and bigotry that this man expressed, I have never defrauded anyone, and I am legal permanent resident with 100 percent clean record, and it really hurt me.

13) Mr. Wolff was causing confrontation like this, and at one point I heard Mr. Vujin say to Mr. Wolff "Don't touch me!" and "Get off me!".

14) Further affiant sayeth naught.

_____

Jevgenijs Minajevs

**STATE OF FLORIDA**
**COUNTY OF: MIAMI-DADE**

Sworn to or affirmed and signed before me____ ON    09/26/2014_____
by ____ *JEVGENIJS MINAJEV*_____, who is personally known to me.
(PRINT, TYPE OR STAMP COMISSIONED NAME OF NOTARY PUBLIC)
Ibrahim Grcic, Notary Public_____ *Ibrahim G*___.

IBRAHIM GRCIC
Notary Public - State of Florida
My Comm. Expires May 13, 2017
Commission # FF 017766
Bonded Through National Notary Assn.

EXHIBIT "C" 2/8

## STATE OF FLORIDA
## IN THE CIRCUIT COURT, IN AND FOR MIAMI DADE COUNTY

PETER M. VUJIN, ESQ.,

     Petitioner,

Case Number: 12 - 39647 - RAM

vs.

RONALD R. WOLFF,

     Respondent.

_____/

### AFFIDAVIT OF JULIO GOMEZ IN SUPPORT OF THE PETITIONER

**COMES NOW**, first being duly sworn, Julio Bosco Gomez Lacayo, and hereby under penalty of Perjury, deposes as follows:

1) I am over 18 years of age, and I am a citizen of the United States, and a resident of Miami-Dade County, Florida, and I have personal knowledge of all the facts herein because I was present with Mr. Vujin, esq., on 11/12/2012 when a person posing as a City of Miami Police officer, armed with a gun, prevented Mr. Vujin and me from returning to Mr. Vujin's residence.

2) The officer's name was Molina. He had a gun, and at gunpoint, marched Mr. Vujin and me outside of the building, when we were at the door of Mr. Vujin's apartment.

3) I was extremely scared and Mr. Vujin told me we have to comply with a lawful order of a police officer. I felt like I was being detained by use of a gun and a badge.

4) Mr. Vujin and I were taken against our will downstairs to the lobby.

5) At that point, Mr. Vujin called the Police. A Sergeant and an officer arrived, and the building refused to let them in, even after the Sergeant ordered the concierge to do so. We all waited until someone opened the door, at which point the Police interviewed RONALD R. WOLFF. Mr. Vujin then asked the police to escort us to his property. The Police entered Mr. Vujin's home, established the record and told me, and Mr. Alexander Mantofel, that we will never have a problem with RONALD R. WOLLF again.

EXHIBIT "C"  3/8

6) The Respondent, RONALD R. WOLFF, fired Mr. Molina two days later.

7) Molina was just impersonating an armed police officer, and it definitely is clear to me that he was paid by RONALD R. WOLFF, in order to harass me and Mr. Vujin at gunpoint. I am aware of the fact that Mr. Vujin represents many people who are asking for the books of the corporation, Mirador 1200, Inc., under the control of RONALD R. WOLFF. RONALD R. WOLFF has not produced those corporate records for the last 6 years, in a condominium where there are more than 400 units, with an estimated yearly income in the millions of dollars.

8) I am aware that this situation has been going on for years, and that Mr. Vujin has suffered terribly, but did nothing to deserve it – he is just an attorney whose clients want to see the books of the corporation controlled by RONALD R. WOLFF.

9) The court should order RONALD R. WOLFF to surrender his weapons, stop stalking and harassing Mr. Vujin, and not come within 500 feet of Mr. Vujin and his residence, and have absolutely no contact with Mr. Vujin, directly or through third parties, except to give Mr. Vujin an access card, so that Mr. Vujin can actually enter his home. This stalking and harassment by RONALD R. WOLFF must stop.

10) Finally, Mr. Vujin informed me on 8/4/2014 that RONALD R. WOLFF threatened Mr. Vujin again on that day, saying: "We're gonna get you out! Finally we are getting you out" when Mr. Vujin went downstairs to the convenience store. Further affiant sayet naught.

_____
Julio Bosco Gomez Lacayo

STATE OF FLORIDA

Known , on 09/26/2014 by
notary on
IBRAHIM GRCIC

IBRAHIM GRCIC
Notary Public - State of Florida
My Comm. Expires May 13, 2017
Commission # FF 017766
Bonded Through National Notary Assn.

EXHIBIT "C"  4/8

**STATE OF FLORIDA**
**IN THE CIRCUIT COURT, IN AND FOR MIAMI DADE COUNTY**

PETER M. VUJIN, ESQ.,

       Petitioner,

                                 Case Number:

vs.

RONALD R. WOLFF,

       Respondent.

_____/

<u>AFFIDAVIT OF ALEXANDER MANTOFEL IN SUPPORT OF THE PETITIONER</u>

**COMES NOW**, first being duly sworn, Alexander Mantofel, and hereby under penalty of Perjury, deposes as follows:

1) I am over 18 years of age, and I am a citizen of the United States, and a resident of Miami-Dade County, Florida, and I have personal knowledge of all the facts herein me witnessing the events at first hand.

2) I have never seen an association to go to such lengths, to get rid of an owner that pays their association fees, like the Petitioner, PETER M. VUJIN, ESQ., especially because VUJIN lived in this building for nine years and never had any problems with anyone, except the Respondent, RONALD R. WOLFF.

3) I was present on the night of 11/12/2012 in the home of VUJIN. I saw a non-police-officer, posing as one, and wearing a police uniform, with a gun, preventing VUJIN and Julio Gomez, from entering his own unit, for no apparent reason.

4) Then VUJIN called the Police, and I saw him open the door to his apartment with two police officers, along with Mr. Gomez, and the fake police officer, who then verified that VUJIN returned to his own residence.

5) I saw the Police ask VUJIN for proof that he lives in his home, that VUJIN provided, and they told the fake police officer, who had a gun, that I felt threatened by, while I was legally

EXHIBIT "C" 5/8

registered as a guest of VUJIN, that he had no right to tell VUJIN or his guests that we could not reside at his residence.

6) At this point the fake police officer left with the Police. Police Sergeant present at the scene told me that we should have no more problems. VUJIN and Mr. Gomez were restored to VUJIN's home.

7) The court should order that there are no more problems with VUJIN's home, because we have a right to be there.

8) Further affiant sayeth naught.

_____
Alexander Mantofel

**STATE OF FLORIDA**
**COUNTY OF: MIAMI-DADE**

Sworn to or affirmed and signed before me_____ *ALEXANDER  MANTOFEL*_____

by _____, who is personally known to me.

(PRINT, TYPE OR STAMP COMISSIONED NAME OF NOTARY PUBLIC)

Ibrahim Grcic, Notary Public

_____

IBRAHIM GRCIC
Notary Public - State of Florida
My Comm. Expires May 13, 2017
Commission # FF 017766
Bonded Through National Notary Assn.

EXHIBIT "C" 6/8

**STATE OF FLORIDA**
**IN THE CIRCUIT COURT, IN AND FOR MIAMI DADE COUNTY**

PETER M. VUJIN, ESQ.,

      Petitioner,

Case Number:

vs.

RONALD R. WOLFF,

      Respondent.

_____/

<u>AFFIDAVIT OF MEHMET ZEKI GUCLU IN SUPPORT OF THE PETITIONER</u>

**COMES NOW**, first being duly sworn, Mehmet Zeki Guclu, and hereby under penalty of Perjury, deposes as follows:

1) I am over 18 years of age, and I am a legal permanent resident of the United States, and a resident of New York, New York, and I have personal knowledge of all the facts herein because I saw them happen.

2) Mr. Vujin is my attorney, and I sent him a package via U.S. Mail. I mailed the package with the documents, with my passport, with my greencard, to Mr. Vujin.

3) I wrote on the box if Peter is not home, leave it in the lobby.

4) The building denied the delivery of my mail, as seen from the attached USPS receipt.

5) Mr. Vujin informed me that this is the crime of interference with U.S. Mail. Ultimately, I had to come from New York and I picked up the package with Mr. Vujin from post office, but much later than I wanted it.

6) Mr. Vujin does not have an access card, so he has to hide to enter his own home.

7) I own a business for 14 years, transporting New York city's sanitation garbage to railtrain. Mr. Vujin is a nice person, he has been my friend for years, he helped my mom, my brother and also helped me in many legal things.

8) It's not fair since I see Peter from years ago, his morale is totally destroyed, I can't see a smile

EXHIBIT "C" 7/8

on his face anymore, it is very sad to see my clever friend, who study hard to get his degree, and be a great citizen and helping other citizens to be treated that way.

9) Before you make a decision, you should consider that Mr. Vujin help many people, never charge anything.

10) I see him suffering greatly.

11) Further affiant sayeth naught.

_____

                                        Mehmet Zeki Guclu

**STATE OF FLORIDA**
**COUNTY OF: MIAMI-DADE**

Sworn to or affirmed and signed before me_____ON____09\26\2014_____

by ____MEHMET ZEKI GUCLU____, who is personally known to me.

(PRINT, TYPE OR STAMP COMISSIONED NAME OF NOTARY PUBLIC)

Ibrahim Grcic, Notary Public_____Ibruh Grp

IBRAHIM GRCIC
Notary Public - State of Florida
My Comm. Expires May 13, 2017
Commission # FF 017766
Bonded Through National Notary Assn.

EXHIBIT "C" 8/8

4/12/2018                             Gmail - ACTION REQUIRED - Matter 224: MIR-1200-824-Collections

 Gmail                                        Peter Vujin <petermvujinesq@gmail.com>

## ACTION REQUIRED - Matter 224: MIR-1200-824-Collections
4 messages

**O'Connor, Melissa** <law@peytonbolin.com>                    Wed, Dec 6, 2017 at 11:11 AM
Reply-To: melissa@peytonbolin.com, p20a224@peytonbolin.com
To: petermvujinesq@gmail.com

Good Morning Mr. Vujin

As you know I represent Mirador 1200 Condominium Association.  We understand you recently lost title to your unit in the
bank's mortgage foreclosure action.  In light of this the Association is inclined to simply dismiss this pending case for past
due assessments with each side bearing its own attorneys fees and costs.

Let me know if you have an objection to such a resolution at this time.

Thank you
-M

       **Melissa O'Connor, Attorney**
        PeytonBolin, PL
        954.316.1339 | ext 4004
        | melissa@peytonbolin.com |
        www.peytonbolin.com



PeytonBolin, PL may be collecting information pertaining to the collection of a debt. Any information collected for this
purpose will be used solely for that purpose. This e-mail contains information from PeytonBolin, PL that may be
confidential, privileged, and exempt from disclosure under applicable law. The information is intended only for use by the
person or entity to which it is addressed. If you are not the intended recipient of this message, you are hereby notified that
any review, dissemination, distribution or copying of this message and any attachments thereto, is strictly prohibited. If
you have received this message in error, please notify us immediately by telephone at 954-316-1339.

**Peter Vujin** <petermvujinesq@gmail.com>                     Thu, Dec 7, 2017 at 8:57 AM
To: rob weber <rhwlaw@gmail.com>

    [Quoted text hidden]

**Peter Vujin** <petermvujinesq@gmail.com>                     Thu, Dec 7, 2017 at 8:59 AM
To: p20a224@peytonbolin.com, melissa@peytonbolin.com
Cc: Peter Vujin <petermvujinesq@gmail.com>
Bcc: rob weber <rhwlaw@gmail.com>

Good Morning, dear Ms. O'Connor, esq:

Im in receipt and will respond shortly.

Thank you very much and have a good day,               EXHIBIT "D"

Yours,                                                          1/1

Filing # 58652356 E-Filed 07/06/2017 12:05:48 PM

## IN THE SUPREME COURT OF FLORIDA

THE FLORIDA BAR,

    Complainant,

v.

PETER MILAN PREDRAG VUJIN,

    Respondent.

_____/

Supreme Court Case
No.

The Florida Bar File Nos.
2016-70,238(11D)
2016-70,272(11D)

## **COMPLAINT**

The Florida Bar, complainant, files this Complaint against Peter Milan

Predrag Vujin, Respondent, pursuant to the Rules Regulating The Florida Bar and

alleges:

    1.    Respondent is, and at all times mentioned in the complaint was, a

member of The Florida Bar, admitted on April 28, 2003 and is subject to the

jurisdiction of the Supreme Court of Florida.

    2.    Respondent practiced law in Miami-Dade County, Florida, at all times

material.

    3.    The Eleventh Judicial Circuit Grievance Committee D found probable

cause to file this complaint pursuant to Rule 3-7.4, of the Rules Regulating The

Florida Bar, and this complaint has been approved by the presiding member of that

committee.

EXHIBIT "E" 1/20

## COUNT I:  AS TO THE FLORIDA BAR FILE NO. 2016-70,272(11D)
### (Complaint of Russell Sibley)

4.      Respondent was counsel to one of the parties attending an arbitration in Tampa.  The arbitration took place on the afternoon of December 2, and for an additional twelve hours on December 3, 2014.  On December 1, 2014, Respondent hired Bay Area Court Reporting, Inc., (hereinafter referred to as "Bay Area") to transcribe the proceedings.

5.      Following the arbitration, Bay Area provided invoices to Respondent indicating the monies he still owed to the agency for outstanding appearance and transcript fees.  Respondent did not pay the entirety of his share of the outstanding balance, despite numerous demands made over several months.

6.      Respondent did make three partial payments towards the outstanding appearance fee. On December 22, 2014, Respondent made one such payment in the amount of $500 towards the court reporter's fee on his credit card. According to Respondent, the other two partial payments were made from the client's credit card.

7.      Ultimately, Bay Area provided the four volume transcript to Respondent via email in February 2015, despite the fact that he had not yet paid the outstanding balances.

EXHIBIT "E" 2/20

8.     As the balances were then still outstanding, Bay Area was required to file suit in the County Court in and for Hillsborough County, in order to recoup its fees.

9.     Thereafter, on May 12, 2015, Respondent fraudulently disputed the $500 credit card charge he had paid towards the court reporter's fees in December 2014.  He stated that the basis for the disputed charge was that "merchant refused to send."

10.    As a result of the disputed charge, Mastercard debited $500 from Bay Area's account pending resolution of the disputed transaction.  These funds were later returned to Bay Area's account in June 2015, when the credit card company rejected Respondent's fraudulent claim.

11.    Respondent engaged in a pattern of misconduct throughout the pendency of the small claims case brought by Bay Area, and the appeals therefrom. Respondent filed numerous unprofessional and frivolous pleadings, some of which demonstrated a fundamental lack of understanding regarding court rules and substantive law.  His actions delayed the proceedings and needlessly expended judicial resources. Moreover, Respondent made blatant and deliberate misrepresentations to the court in his pleadings. Examples of Respondent's misconduct include:

3                  EXHIBIT "E" 3/20

12.    Respondent filed a "verified motion to dismiss, change venue and transfer to Circuit Court, and reschedule pre-trial conference." In that motion Respondent affirmatively pled that, "the Plaintiff never provided me with the transcript." This was demonstrated to be a material misrepresentation when Respondent admitted under oath at the trial in the underlying case that Bay Area had in fact provided him with the transcripts via email in February 2015.

13.    Respondent's verified motion to dismiss was rife with unfounded, unprofessional, and scandalous allegations. For instance, Respondent averred, "Plaintiff, and in fact, it's [sic] principal, a vulgar woman called Komori, sabotaged my case and interfered with my business relationship and contract with my client because she emailed the Arbitrator in the case." He similarly referred to plaintiff's representative in the pleading as "the greedy plaintiff."

14.    In the same pleading, Respondent affirmatively pled that "I am in the process of filing a counter-claim against the Plaintiff for intentional/negligent interference with contractual relations, perjury, fraud, etc., because Komori intentionally falsified the transcript, sabotaged my case and my relationship with my client. The counter-claims exceed $15,000.00. As such, I respectfully move the Court to transfer the action to the Circuit Court." Despite his statements in the pleading, Respondent never filed a counterclaim, and there was no legitimate factual or legal basis upon which the case could be transferred to another court.


EXHIBIT "E" 41
20

15.   Respondent also filed a "verified motion to quash and abate for lack of service of process and no jurisdiction." In his pleading Respondent asserted he was never served with process.  Respondent's assertion was demonstrated to be frivolous and/or false by the sworn return of service, filed with the Clerk of Court, which indicated he was in fact personally served with the summons and Complaint.

16.   The trial court denied the two frivolous pre-trial motions filed by Respondent.  Respondent attempted to appeal the non-final orders to the Circuit Court.  The appellate court informed Respondent that such appeals were not proper, but allowed him an opportunity to refile the appropriate petition for writ of certiorari.  The petition for writ remained pending throughout the pendency of the underlying proceedings, and was ultimately denied by the Circuit Court.

17.   At the pre-trial conference, Respondent began taking pictures of the Plaintiff on his cell phone in the courtroom.  His conduct upset the plaintiff, who alerted the judge to Respondent's actions.  Respondent was ordered to remain in the courtroom for an additional period of time so that the plaintiff could return to her vehicle and exit the area without fear of further contact with Respondent.

18.   Upon denial of his frivolous pre-trial motions, Respondent filed his Answer and Affirmative Defenses on July 28, 2015.  In his pleading, Respondent once again made affirmative misrepresentations to the court.  He stated that the plaintiff court reporting agency, "never delivered the transcript to me, just to the

EXHIBIT "E" 5/20

opposing counsel, but fraudulently filed this lawsuit after she fraudulently took

$500.00 of my own money."

19.     As previously indicated, this was demonstrated to be a blatant

misrepresentation to the court when Respondent was forced to admit, under oath at

the trial in this cause, that he received the four volumes of transcript directly from

the court reporting agency via email five months earlier in February 2015.

20.     In that same pleading, Respondent also asserted that:

A.     "The transcript appears to have been doctored, because I

remember what I said, and the transcript does not indicate what I said.  The

Plaintiff owed me a duty of reasonable care, that they breached, by failing to

provide the transcript, doctoring the transcript for money, allowing the transcript to

be doctored by the opposing counsel, and libeling my clients.  As such, the

Plaintiff owes me money here."

B.     "The Plaintiff simply does not know how to write an invoice.  I

taught her how we write invoices in the United States of America."

C.     "The Plaintiff fraudulently induced me to pay her $500.00 of

my own money, but then never provided me with the transcript.  I respectfully seek

a setoff of $500.00 actually paid to the Plaintiff."

EXHIBIT "E" 6/
20

D.      "In addition, I also seek a setoff of approximately $400,000.00 that the Plaintiff cost my client here, because of the negligent acts as described above."

E.      "The Plaintiff never provided me with a transcript, even though they took my money. Therefore, the whole Complaint is an attempt to deceive the Court, just like the Plaintiff deceived me."

F.      "Whoever typed the transcript up basically did not know what they were doing, or were hasty, or purposefully doctored the transcript so that my clients lose, because the Plaintiff was paid more money by the opposing counsel."

21.     Counsel for the plaintiff moved to strike Respondent's Answer and Affirmative Defenses because they were unsigned, and because they contained immaterial, impertinent, scandalous and racist material.

22.     The Plaintiff's motion to strike was set and properly noticed for hearing on a date requested by Respondent. Notwithstanding same, Respondent did not appear for the hearing.

23.     At the hearing, the court struck the offending pleading.  Thereafter, Respondent filed an amended answer and affirmative defenses, removing the more objectionable and outrageous material, but retaining the remainder of the nonsensical and legally insufficient defenses.

7

EXHIBIT "E" 7/20

24.     Thereafter, Respondent filed a motion for enlargement of time to serve a compulsory counterclaim. The motion contained numerous false statements of fact and law.  The stated basis for the continuance was that the plaintiff/counter-defendant was allegedly hiding from process servers.

25.     However same was demonstrated to be false by the docket in the case, which reflected that no counterclaim was then pending, or indeed had ever been filed throughout the entirety of the underlying litigation.  It is axiomatic that one cannot "serve" a document that does not exist.

26.     Moreover, even if the allegation had been true, same would not have served as a valid legal basis for an extension, because a counterclaim does not require service by a process server.  It is simply mailed, emailed, or served through the e-portal to the party or its counsel of record.

27.     Respondent's efforts to delay the proceedings continued through commencement of trial.  Two days prior to the trial in the underlying case, Respondent filed a motion to compel discovery and to stay the matter, asserting as the basis for his motion that plaintiff's counsel had not responded to his interrogatories and requests for admissions. Respondent's allegations were demonstrated to be false by the docket, the e-portal emails, and individual emails to both Respondent and his co-counsel electronically serving the discovery.

EXHIBIT "E" "8/
20

Counsel for plaintiff was required to respond to this frivolous and false motion, following which Respondent withdrew the motion.

28.     The next day, Respondent filed yet another motion to stay and postpone the trial.  In his motion, he frivolously asserted that his pending petition for writ of certiorari barred the court from trying the case.  Plaintiff's counsel was once again required to abandon his trial preparations in order to file a response in opposition.

29.     Despite Respondent's efforts to delay the matter, the trial occurred on October 15, 2015.  Following conclusion of the trial, the court announced its findings in favor of the plaintiff and awarded her $3,228.00 in damages, plus costs and interest.

30.     The final judgement reflecting these findings was entered on February 3, 2016. In the final judgement, the court ordered Respondent to complete under oath Florida Rules of Civil Procedure Form 1.977 (Fact Information Sheet), and to serve same along with all required attachments on plaintiff's counsel within forty-five days of the date of final judgement.

31.     Respondent failed to comply with the court's order, and did not file the Form 1.977, nor did he satisfy the judgement.  Plaintiff's counsel granted additional time to respond or to request an extension of time to do so, however Respondent failed to take any action.

EXHIBIT "E" 9/20

32.     Accordingly, Plaintiff's counsel filed a motion for Order to Show Cause and for Contempt. The Court granted the motion and issued an Order to Show Cause.  Respondent failed to appear or to respond to the Order to Show Cause, and the Court issued an Order holding Respondent in contempt.

33.     To this date, Respondent remains in contempt of court, as he still has not satisfied the judgement, nor has he filed the required Fact Information Sheet as ordered by the court.

34.     Based on the foregoing, Respondent has violated the following Rules Regulating The Florida Bar:  Rules 4-1.1 (Competence), 4-3.1 (Advocate; Meritorious Claims and Contentions), 4-3.2 (Expediting Litigation), 4-3.3 (Candor Toward the Tribunal), 4-3.4(c) (A lawyer must not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists), 4-3.4(d) (A lawyer must not,  in pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party), 4-4.4 (Respect for Rights of Third Persons), 4-8.4(c) (A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4-8.4(d) (A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice) of the Rules Regulating The Florida Bar.

EXHIBIT "E" 10/
20

## COUNT II:  AS TO THE FLORIDA BAR FILE NO. 2016-70,238(11D)
(Complaint of Eric J. Grabois)

35.     Respondent was a defendant in a foreclosure action filed by Mirador 1200 Condominium Association, Inc. (hereinafter referred to as "Mirador" or "Plaintiff") in Miami Dade County, Case No. 2009-48623 CA 01.

36.     Respondent at times represented himself *pro se* in this action, and at times was represented by Mr. Albert Weintraub, who acted as co-counsel in the proceedings.

37.     From October 24, 2014, through July 16, 2015, the plaintiff was represented by Mr. Eric J. Grabois, the complainant in the instant Bar proceedings. The instant Bar disciplinary matter arises from Respondent's misconduct during the Mirador litigation.

38.     Once Mr. Grabois filed his appearance in the case, Respondent[1] began sending him unprofessional, unintelligible, and disturbing emails.  For example, in one such email Respondent stated:

> Further, you have crossed the line, Sir. Your job is not to assist in a Fraud.  Just you bloody cross me here, Sir!
>
> I represent about 40 clients who are ready to punish Mr. Wolff, I am trying to prevent that.  I fear they may overpower me, in which case I will be unable to protect him and you.

---

[1] At this point in the proceedings, Respondent was representing himself *pro se*.

11

EXHIBIT "E" 11
20

> Thus, as settlement in full, I propose that your client pays me
> $1 Million, I will sign the Deed to my condo to him.

39.     As a result of Respondent's misconduct, on April 28, 2015, Mr.

Grabois filed an "Emergency Motion to Order the Defendant to Cease from

Threatening Counsel, to Cease from Inappropriate Conduct, and for Sanctions,"

before the Honorable Monica Gordo.

40.     The stated basis for the motion was that Respondent "made threats

to the Plaintiff and its Counsel, disparaged the Plaintiff in his pleadings, failed to

comply with the Florida Rules of service, and is generally acting contrary to the

Florida Rules of Professional Conduct."

41.     Examples of this type of misconduct include Respondent's naming of

the plaintiff as a "criminal corporation" in the style of the case on his pleadings

filed with the court.

42.     Additionally, in his Answers and Affirmative Defenses, Respondent

referred to Mirador as a "private, illegal, for-profit prison." He disparaged the

plaintiff's representative, stating, "RONALD WOLFF, criminal manager and

alleged president of MIRADOR . . ."

43.     Later in the proceedings, Respondent pled in public record pleadings

that Wolff had previously been arrested for a violent felony, and made outrageous

allegations against Mr. Wolff, including that he had orchestrated the kidnapping,

EXHIBIT "E" 12/
20

emotional abuse, battering and torture of Respondent, just because Respondent demanded to see the corporate records.

44.     Respondent also alleged he had been assaulted and put in fear of his life by Mr. Wolff following a court hearing, when, due to "the posture of Ron Wolff's body and the menacing look in his eyes," Respondent believed Mr. Wolff would try to run him over with his vehicle.

45.     Similarly, Respondent filed frivolous pleadings in the litigation.  For instance, Respondent filed a petition for bankruptcy after Mirador initiated the foreclosure action.  Despite the fact that Mirador had successfully obtained an order from the Bankruptcy court removing its lien from the Bankruptcy action and permitting Mirador to continue to pursue the litigation in the state court proceeding, Respondent filed frivolous motions to stay and to dismiss the case based on the bankruptcy proceedings.  Additionally, in his Answer and Affirmative Defenses, he pled "discharge in bankruptcy" as an affirmative defense.

46.     Both the frivolous motion to stay and the motion to dismiss were set for hearing, on March 5, 2015 and March 26, 2015, respectively; and Respondent failed to appear at both hearings.  The court denied the motions.

47.     In its Order denying the motion to dismiss, the court ordered Respondent to file his Answer within fifteen days of the Order.  Respondent failed

13

EXHIBIT "E" 13/
20

to comply with the court's order.  Plaintiff was required to file a motion for default, after which Respondent submitted his Answer.

48.    Respondent failed to comply with proper rules and procedures concerning service of his discovery requests on plaintiff.  Instead of filing same, Respondent sent the requests as illegible pictures from his cell phone to plaintiff's counsel.

49.    In emails and pleadings, Respondent threatened plaintiff and his lawyer with criminal action as well as a Bar complaint, in order to obtain an advantage in the litigation.

50.    Based on all of the foregoing, on April 30, 2015, the court held an emergency hearing on the plaintiff's "Emergency Motion to Order the Defendant to Cease from Threatening Counsel, to Cease from Inappropriate Conduct, and for Sanctions," filed just two days prior.

51.    The trial judge expressed her outrage concerning the Respondent's misconduct leading up to that hearing.  The court gave Respondent an opportunity to conform his conduct to professional standards, and issued an order holding the emergency motion in abeyance pending Respondent's further conduct in the matter.

52.    Thereafter, Mr. Grabois withdrew from the matter and Peyton Bolin substituted in as counsel of record.  Respondent's misconduct continued unabated.

14

EXHIBIT "E" 141
25

53.     During a dispute regarding the scheduling and scope of a deposition that was to take place in the case, Respondent once again interjected inflammatory, irrelevant and scandalous allegations into the pleadings.  In his Response to a motion for protective order, at a hearing, and in an email Respondent sent to Mr. Grabois, Plaintiff's former counsel, Respondent alleged that Mr. Grabois, and by inference his former client, were responsible for a murder-suicide that took place at the condominium, despite the fact that the incident had no connection to the Mirador foreclosure action.

54.     The court took these matters up at a hearing on October 8, 2015.  At that hearing, the court expressed her concerns regarding Respondent's conduct of the litigation, and his mental health.  The court ordered Respondent to have no further contact with Mr. Grabois.  The court also indicated that, upon proper motion, it would reconsider its prior ruling holding the emergency motion for Defendant to cease from threatening counsel and plaintiff, etc., in abeyance.

55.     As a result of Respondent's continued misconduct directed at him, Mr. Grabois filed the instant grievance with the Florida Bar.

56.     Thereafter, despite the very specific order of the court directing *Respondent* to have no contact with Mr. Grabois, less than one month later, Respondent filed a Counterclaim and Motion to Dismiss With Prejudice, which twisted the court's prior ruling.  The basis for Respondent's entirely frivolous

15     EXHIBIT "E" 15/20

motion was that the court had ordered *Mr. Grabois to have no contact with him,* and that said order was violated when Mr. Grabois filed the instant bar complaint. In the same pleading, Respondent also realleged the same inflammatory, scandalous and irrelevant allegations about Mr. Wolff's alleged criminal past and violent actions toward Respondent.

57.     The Plaintiff thereafter filed a Motion for Order to Show Cause and requested the Court reconsider the prior emergency motion.  Mr. Grabois filed an affidavit in support of the motion.  The Court granted both the prior emergency motion to order Defendant to cease threatening counsel and plaintiff, and to cease from inappropriate conduct, etc., as well as the Order to Show Cause why Respondent should not be held in contempt. The court struck all of Respondent's prior pleadings containing the scandalous and impertinent allegations and ordered that same would be kept under seal.

58.     Based on the foregoing, Respondent has violated the following Rules Regulating The Florida Bar:  Rules 4-1.1 (Competence), 4-3.1 (Advocate; Meritorious Claims and Contentions), 4-3.4(c) (A lawyer must not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists), 4-3.4(g) (A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter), 4-3.4(h) (A lawyer must not present,

EXHIBIT "E" 16/20

participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter), 4-4.4 (Respect for Rights of Third Persons) and 4-8.4(d) (A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice) of the Rules Regulating The Florida Bar.

WHEREFORE, The Florida Bar prays respondent will be appropriately disciplined in accordance with the provisions of the Rules Regulating The Florida Bar as amended.

Respectfully submitted,

Jennifer R. Falcone, Bar Counsel
The Florida Bar - Miami Branch Office
444 Brickell Avenue, Suite M-100
Miami, Florida 33131-2404
(305) 377-4445
Florida Bar No. 624284
jfalcone@flabar.org

Adria E. Quintela, Staff Counsel
The Florida Bar
Lakeshore Plaza II, Suite 130
1300 Concord Terrace
Sunrise, Florida 33323
(954) 835-0233
Florida Bar No. 897000
aquintel@flabar.org

EXHIBIT "E" 17/20

## CERTIFICATE OF SERVICE

I certify that this document has been Efiled with The Honorable John A. Tomasino, Clerk of the Supreme Court of Florida with a copy provided via email to Peter Milan Predrag Vujin, Respondent, at petermvujinesq@gmail.com and peterismyfavorite@gmail.com; using the Efiling Portal and that a copy has been furnished by United States Mail via certified mail No.  7014 2120 0003 2092 9189, return receipt requested to Peter Milan Predrag Vujin, Respondent, whose record bar address is 1200 West Avenue, Apt. 824, Miami Beach, FL  33139-4317; and via email to Jennifer R. Falcone, Bar Counsel, jfalcone@flabar.org, on this 6th day of July, 2017.

*Adria E. Quintela*

Adria E. Quintela, Staff Counsel

18          Exhibit "E" 19/20

## NOTICE OF TRIAL COUNSEL AND DESIGNATION OF PRIMARY EMAIL ADDRESS

PLEASE TAKE NOTICE that the trial counsel in this matter is Jennifer R Falcone, Bar Counsel, whose address, telephone number and primary email address are The Florida Bar, Miami Branch Office, 444 Brickell Avenue, Rivergate Plaza, Suite M-100, Miami, Florida 33131-2404, (305) 377-4445 and jfalcone@flabar.org; and nfroncko@flabar.org. Respondent need not address pleadings, correspondence, etc. in this matter to anyone other than trial counsel and to Staff Counsel, The Florida Bar, Lakeshore Plaza II, Suite 130, 1300 Concord Terrace, Sunrise, Florida 33323, aquintel@flabar.org.

EXHIBIT "E" 19/
20

## **MANDATORY ANSWER NOTICE**

RULE 3-7.6(h)(2), RULES OF DISCIPLINE, EFFECTIVE MAY 20, 2004, PROVIDES THAT A RESPONDENT SHALL ANSWER A COMPLAINT.

EXHIBIT "E" 20/20