IN THE SUPREME COURT OF FLORIDA

THE FLORIDA BAR,

    Complainant,

v.

PETER MILAN PREDRAG VUJIN,

    Respondent.

_____/

Supreme Court Case
No.

The Florida Bar File Nos.
2016-70,238(11D)
2016-70,272(11D)

## **COMPLAINT**

The Florida Bar, complainant, files this Complaint against Peter Milan
Predrag Vujin, Respondent, pursuant to the Rules Regulating The Florida Bar and
alleges:

1.    Respondent is, and at all times mentioned in the complaint was, a
member of The Florida Bar, admitted on April 28, 2003 and is subject to the
jurisdiction of the Supreme Court of Florida.

2.    Respondent practiced law in Miami-Dade County, Florida, at all times
material.

3.    The Eleventh Judicial Circuit Grievance Committee D found probable
cause to file this complaint pursuant to Rule 3-7.4, of the Rules Regulating The
Florida Bar, and this complaint has been approved by the presiding member of that
committee.

## <u>COUNT I:  AS TO THE FLORIDA BAR FILE NO. 2016-70,272(11D)</u>
### <u>(Complaint of Russell Sibley)</u>

4.      Respondent was counsel to one of the parties attending an arbitration in Tampa.  The arbitration took place on the afternoon of December 2, and for an additional twelve hours on December 3, 2014.  On December 1, 2014, Respondent hired Bay Area Court Reporting, Inc., (hereinafter referred to as "Bay Area") to transcribe the proceedings.

5.      Following the arbitration, Bay Area provided invoices to Respondent indicating the monies he still owed to the agency for outstanding appearance and transcript fees.  Respondent did not pay the entirety of his share of the outstanding balance, despite numerous demands made over several months.

6.      Respondent did make three partial payments towards the outstanding appearance fee. On December 22, 2014, Respondent made one such payment in the amount of $500 towards the court reporter's fee on his credit card. According to Respondent, the other two partial payments were made from the client's credit card.

7.      Ultimately, Bay Area provided the four volume transcript to Respondent via email in February 2015, despite the fact that he had not yet paid the outstanding balances.

8.     As the balances were then still outstanding, Bay Area was required to file suit in the County Court in and for Hillsborough County, in order to recoup its fees.

9.     Thereafter, on May 12, 2015, Respondent fraudulently disputed the $500 credit card charge he had paid towards the court reporter's fees in December 2014.  He stated that the basis for the disputed charge was that "merchant refused to send."

10.     As a result of the disputed charge, Mastercard debited $500 from Bay Area's account pending resolution of the disputed transaction.  These funds were later returned to Bay Area's account in June 2015, when the credit card company rejected Respondent's fraudulent claim.

11.     Respondent engaged in a pattern of misconduct throughout the pendency of the small claims case brought by Bay Area, and the appeals therefrom. Respondent filed numerous unprofessional and frivolous pleadings, some of which demonstrated a fundamental lack of understanding regarding court rules and substantive law.  His actions delayed the proceedings and needlessly expended judicial resources. Moreover, Respondent made blatant and deliberate misrepresentations to the court in his pleadings. Examples of Respondent's misconduct include:

3

12.     Respondent filed a "verified motion to dismiss, change venue and transfer to Circuit Court, and reschedule pre-trial conference."  In that motion Respondent affirmatively pled that, "the Plaintiff never provided me with the transcript." This was demonstrated to be a material misrepresentation when Respondent admitted under oath at the trial in the underlying case that Bay Area had in fact provided him with the transcripts via email in February 2015.

13.     Respondent's verified motion to dismiss was rife with unfounded, unprofessional, and scandalous allegations. For instance, Respondent averred, "Plaintiff, and in fact, it's [sic] principal, a vulgar woman called Komori, sabotaged my case and interfered with my business relationship and contract with my client because she emailed the Arbitrator in the case."  He similarly referred to plaintiff's representative in the pleading as "the greedy plaintiff."

14.     In the same pleading, Respondent affirmatively pled that "I am in the process of filing a counter-claim against the Plaintiff for intentional/negligent interference with contractual relations, perjury, fraud, etc., because Komori intentionally falsified the transcript, sabotaged my case and my relationship with my client.  The counter-claims exceed $15,000.00.  As such, I respectfully move the Court to transfer the action to the Circuit Court."  Despite his statements in the pleading, Respondent never filed a counterclaim, and there was no legitimate factual or legal basis upon which the case could be transferred to another court.

15.     Respondent also filed a "verified motion to quash and abate for lack of service of process and no jurisdiction." In his pleading Respondent asserted he was never served with process.  Respondent's assertion was demonstrated to be frivolous and/or false by the sworn return of service, filed with the Clerk of Court, which indicated he was in fact personally served with the summons and Complaint.

16.     The trial court denied the two frivolous pre-trial motions filed by Respondent.  Respondent attempted to appeal the non-final orders to the Circuit Court.  The appellate court informed Respondent that such appeals were not proper, but allowed him an opportunity to refile the appropriate petition for writ of certiorari.  The petition for writ remained pending throughout the pendency of the underlying proceedings, and was ultimately denied by the Circuit Court.

17.     At the pre-trial conference, Respondent began taking pictures of the Plaintiff on his cell phone in the courtroom.  His conduct upset the plaintiff, who alerted the judge to Respondent's actions.  Respondent was ordered to remain in the courtroom for an additional period of time so that the plaintiff could return to her vehicle and exit the area without fear of further contact with Respondent.

18.     Upon denial of his frivolous pre-trial motions, Respondent filed his Answer and Affirmative Defenses on July 28, 2015.  In his pleading, Respondent once again made affirmative misrepresentations to the court.  He stated that the plaintiff court reporting agency, "never delivered the transcript to me, just to the

opposing counsel, but fraudulently filed this lawsuit after she fraudulently took $500.00 of my own money."

19.    As previously indicated, this was demonstrated to be a blatant misrepresentation to the court when Respondent was forced to admit, under oath at the trial in this cause, that he received the four volumes of transcript directly from the court reporting agency via email five months earlier in February 2015.

20.    In that same pleading, Respondent also asserted that:

A.    "The transcript appears to have been doctored, because I remember what I said, and the transcript does not indicate what I said.  The Plaintiff owed me a duty of reasonable care, that they breached, by failing to provide the transcript, doctoring the transcript for money, allowing the transcript to be doctored by the opposing counsel, and libeling my clients.  As such, the Plaintiff owes me money here."

B.    "The Plaintiff simply does not know how to write an invoice.  I taught her how we write invoices in the United States of America."

C.    "The Plaintiff fraudulently induced me to pay her $500.00 of my own money, but then never provided me with the transcript.  I respectfully seek a setoff of $500.00 actually paid to the Plaintiff."

6

D.      "In addition, I also seek a setoff of approximately $400,000.00 that the Plaintiff cost my client here, because of the negligent acts as described above."

E.      "The Plaintiff never provided me with a transcript, even though they took my money. Therefore, the whole Complaint is an attempt to deceive the Court, just like the Plaintiff deceived me."

F.      "Whoever typed the transcript up basically did not know what they were doing, or were hasty, or purposefully doctored the transcript so that my clients lose, because the Plaintiff was paid more money by the opposing counsel."

21.     Counsel for the plaintiff moved to strike Respondent's Answer and Affirmative Defenses because they were unsigned, and because they contained immaterial, impertinent, scandalous and racist material.

22.     The Plaintiff's motion to strike was set and properly noticed for hearing on a date requested by Respondent. Notwithstanding same, Respondent did not appear for the hearing.

23.     At the hearing, the court struck the offending pleading.  Thereafter, Respondent filed an amended answer and affirmative defenses, removing the more objectionable and outrageous material, but retaining the remainder of the nonsensical and legally insufficient defenses.

24.     Thereafter, Respondent filed a motion for enlargement of time to serve a compulsory counterclaim. The motion contained numerous false statements of fact and law.  The stated basis for the continuance was that the plaintiff/counter-defendant was allegedly hiding from process servers.

25.      However same was demonstrated to be false by the docket in the case, which reflected that no counterclaim was then pending, or indeed had ever been filed throughout the entirety of the underlying litigation.  It is axiomatic that one cannot "serve" a document that does not exist.

26.     Moreover, even if the allegation had been true, same would not have served as a valid legal basis for an extension, because a counterclaim does not require service by a process server.  It is simply mailed, emailed, or served through the e-portal to the party or its counsel of record.

27.     Respondent's efforts to delay the proceedings continued through commencement of trial.  Two days prior to the trial in the underlying case, Respondent filed a motion to compel discovery and to stay the matter, asserting as the basis for his motion that plaintiff's counsel had not responded to his interrogatories and requests for admissions. Respondent's allegations were demonstrated to be false by the docket, the e-portal emails, and individual emails to both Respondent and his co-counsel electronically serving the discovery.

Counsel for plaintiff was required to respond to this frivolous and false motion, following which Respondent withdrew the motion.

28.    The next day, Respondent filed yet another motion to stay and postpone the trial.  In his motion, he frivolously asserted that his pending petition for writ of certiorari barred the court from trying the case.  Plaintiff's counsel was once again required to abandon his trial preparations in order to file a response in opposition.

29.    Despite Respondent's efforts to delay the matter, the trial occurred on October 15, 2015.  Following conclusion of the trial, the court announced its findings in favor of the plaintiff and awarded her $3,228.00 in damages, plus costs and interest.

30.    The final judgement reflecting these findings was entered on February 3, 2016. In the final judgement, the court ordered Respondent to complete under oath Florida Rules of Civil Procedure Form 1.977 (Fact Information Sheet), and to serve same along with all required attachments on plaintiff's counsel within forty-five days of the date of final judgement.

31.    Respondent failed to comply with the court's order, and did not file the Form 1.977, nor did he satisfy the judgement.  Plaintiff's counsel granted additional time to respond or to request an extension of time to do so, however Respondent failed to take any action.

32.     Accordingly, Plaintiff's counsel filed a motion for Order to Show Cause and for Contempt. The Court granted the motion and issued an Order to Show Cause.  Respondent failed to appear or to respond to the Order to Show Cause, and the Court issued an Order holding Respondent in contempt.

33.     To this date, Respondent remains in contempt of court, as he still has not satisfied the judgement, nor has he filed the required Fact Information Sheet as ordered by the court.

34.     Based on the foregoing, Respondent has violated the following Rules Regulating The Florida Bar:  Rules 4-1.1 (Competence), 4-3.1 (Advocate; Meritorious Claims and Contentions), 4-3.2 (Expediting Litigation), 4-3.3 (Candor Toward the Tribunal), 4-3.4(c) (A lawyer must not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists), 4-3.4(d) (A lawyer must not,  in pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party), 4-4.4 (Respect for Rights of Third Persons), 4-8.4(c) (A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4-8.4(d) (A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice) of the Rules Regulating The Florida Bar.

## COUNT II:  AS TO THE FLORIDA BAR FILE NO. 2016-70,238(11D)
(Complaint of Eric J. Grabois)

35.     Respondent was a defendant in a foreclosure action filed by Mirador 1200 Condominium Association, Inc. (hereinafter referred to as "Mirador" or "Plaintiff") in Miami Dade County, Case No. 2009-48623 CA 01.

36.      Respondent at times represented himself *pro se* in this action, and at times was represented by Mr. Albert Weintraub, who acted as co-counsel in the proceedings.

37.     From October 24, 2014, through July 16, 2015, the plaintiff was represented by Mr. Eric J. Grabois, the complainant in the instant Bar proceedings. The instant Bar disciplinary matter arises from Respondent's misconduct during the Mirador litigation.

38.      Once Mr. Grabois filed his appearance in the case, Respondent[1] began sending him unprofessional, unintelligible, and disturbing emails.  For example, in one such email Respondent stated:

> Further, you have crossed the line, Sir. Your job is not to assist in a Fraud.  Just you bloody cross me here, Sir!
>
> I represent about 40 clients who are ready to punish Mr. Wolff, I am trying to prevent that.  I fear they may overpower me, in which case I will be unable to protect him and you.

---

[1] At this point in the proceedings, Respondent was representing himself *pro se*.

> Thus, as settlement in full, I propose that your client pays me $1 Million, I will sign the Deed to my condo to him.

39.     As a result of Respondent's misconduct, on April 28, 2015, Mr. Grabois filed an "Emergency Motion to Order the Defendant to Cease from Threatening Counsel, to Cease from Inappropriate Conduct, and for Sanctions," before the Honorable Monica Gordo.

40.     The stated basis for the motion was that Respondent "made threats to the Plaintiff and its Counsel, disparaged the Plaintiff in his pleadings, failed to comply with the Florida Rules of service, and is generally acting contrary to the Florida Rules of Professional Conduct."

41.     Examples of this type of misconduct include Respondent's naming of the plaintiff as a "criminal corporation" in the style of the case on his pleadings filed with the court.

42.     Additionally, in his Answers and Affirmative Defenses, Respondent referred to Mirador as a "private, illegal, for-profit prison." He disparaged the plaintiff's representative, stating, "RONALD WOLFF, criminal manager and alleged president of MIRADOR . . ."

43.     Later in the proceedings, Respondent pled in public record pleadings that Wolff had previously been arrested for a violent felony, and made outrageous allegations against Mr. Wolff, including that he had orchestrated the kidnapping,

emotional abuse, battering and torture of Respondent, just because Respondent demanded to see the corporate records.

44.     Respondent also alleged he had been assaulted and put in fear of his life by Mr. Wolff following a court hearing, when, due to "the posture of Ron Wolff's body and the menacing look in his eyes," Respondent believed Mr. Wolff would try to run him over with his vehicle.

45.      Similarly, Respondent filed frivolous pleadings in the litigation.  For instance, Respondent filed a petition for bankruptcy after Mirador initiated the foreclosure action.  Despite the fact that Mirador had successfully obtained an order from the Bankruptcy court removing its lien from the Bankruptcy action and permitting Mirador to continue to pursue the litigation in the state court proceeding, Respondent filed frivolous motions to stay and to dismiss the case based on the bankruptcy proceedings.  Additionally, in his Answer and Affirmative Defenses, he pled "discharge in bankruptcy" as an affirmative defense.

46.     Both the frivolous motion to stay and the motion to dismiss were set for hearing, on March 5, 2015 and March 26, 2015, respectively; and Respondent failed to appear at both hearings.  The court denied the motions.

47.     In its Order denying the motion to dismiss, the court ordered Respondent to file his Answer within fifteen days of the Order.  Respondent failed

to comply with the court's order.  Plaintiff was required to file a motion for default, after which Respondent submitted his Answer.

48.     Respondent failed to comply with proper rules and procedures concerning service of his discovery requests on plaintiff.  Instead of filing same, Respondent sent the requests as illegible pictures from his cell phone to plaintiff's counsel.

49.     In emails and pleadings, Respondent threatened plaintiff and his lawyer with criminal action as well as a Bar complaint, in order to obtain an advantage in the litigation.

50.     Based on all of the foregoing, on April 30, 2015, the court held an emergency hearing on the plaintiff's "Emergency Motion to Order the Defendant to Cease from Threatening Counsel, to Cease from Inappropriate Conduct, and for Sanctions," filed just two days prior.

51.     The trial judge expressed her outrage concerning the Respondent's misconduct leading up to that hearing.  The court gave Respondent an opportunity to conform his conduct to professional standards, and issued an order holding the emergency motion in abeyance pending Respondent's further conduct in the matter.

52.     Thereafter, Mr. Grabois withdrew from the matter and Peyton Bolin substituted in as counsel of record.  Respondent's misconduct continued unabated.

53.     During a dispute regarding the scheduling and scope of a deposition that was to take place in the case, Respondent once again interjected inflammatory, irrelevant and scandalous allegations into the pleadings.  In his Response to a motion for protective order, at a hearing, and in an email Respondent sent to Mr. Grabois, Plaintiff's former counsel, Respondent alleged that Mr. Grabois, and by inference his former client, were responsible for a murder-suicide that took place at the condominium, despite the fact that the incident had no connection to the Mirador foreclosure action.

54.     The court took these matters up at a hearing on October 8, 2015.  At that hearing, the court expressed her concerns regarding Respondent's conduct of the litigation, and his mental health.  The court ordered Respondent to have no further contact with Mr. Grabois.  The court also indicated that, upon proper motion, it would reconsider its prior ruling holding the emergency motion for Defendant to cease from threatening counsel and plaintiff, etc., in abeyance.

55.     As a result of Respondent's continued misconduct directed at him, Mr. Grabois filed the instant grievance with the Florida Bar.

56.     Thereafter, despite the very specific order of the court directing *Respondent* to have no contact with Mr. Grabois, less than one month later, Respondent filed a Counterclaim and Motion to Dismiss With Prejudice, which twisted the court's prior ruling.  The basis for Respondent's entirely frivolous

motion was that the court had ordered *Mr. Grabois to have no contact with him*, and that said order was violated when Mr. Grabois filed the instant bar complaint. In the same pleading, Respondent also realleged the same inflammatory, scandalous and irrelevant allegations about Mr. Wolff's alleged criminal past and violent actions toward Respondent.

57.     The Plaintiff thereafter filed a Motion for Order to Show Cause and requested the Court reconsider the prior emergency motion.  Mr. Grabois filed an affidavit in support of the motion.  The Court granted both the prior emergency motion to order Defendant to cease threatening counsel and plaintiff, and to cease from inappropriate conduct, etc., as well as the Order to Show Cause why Respondent should not be held in contempt. The court struck all of Respondent's prior pleadings containing the scandalous and impertinent allegations and ordered that same would be kept under seal.

58.     Based on the foregoing, Respondent has violated the following Rules Regulating The Florida Bar:  Rules 4-1.1 (Competence), 4-3.1 (Advocate; Meritorious Claims and Contentions), 4-3.4(c) (A lawyer must not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists), 4-3.4(g) (A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter), 4-3.4(h) (A lawyer must not present,

participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter), 4-4.4 (Respect for Rights of Third Persons) and 4-8.4(d) (A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice) of the Rules Regulating The Florida Bar.

WHEREFORE, The Florida Bar prays respondent will be appropriately disciplined in accordance with the provisions of the Rules Regulating The Florida Bar as amended.

Respectfully submitted,

Jennifer R. Falcone, Bar Counsel
The Florida Bar - Miami Branch Office
444 Brickell Avenue, Suite M-100
Miami, Florida 33131-2404
(305) 377-4445
Florida Bar No. 624284
jfalcone@flabar.org

Adria E. Quintela, Staff Counsel
The Florida Bar
Lakeshore Plaza II, Suite 130
1300 Concord Terrace
Sunrise, Florida 33323
(954) 835-0233
Florida Bar No. 897000
aquintel@flabar.org

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document has been Efiled with The Honorable John A. Tomasino, Clerk of the Supreme Court of Florida with a copy provided via email to Peter Milan Predrag Vujin, Respondent, at petermvujinesq@gmail.com and peterismyfavorite@gmail.com; using the Efiling Portal and that a copy has been furnished by United States Mail via certified mail No.  7014 2120 0003 2092 9189, return receipt requested to Peter Milan Predrag Vujin, Respondent, whose record bar address is 1200 West Avenue, Apt. 824, Miami Beach, FL  33139-4317; and via email to Jennifer R. Falcone, Bar Counsel, jfalcone@flabar.org, on this 6th day of July, 2017.

*Adria E. Quintela*

Adria E. Quintela, Staff Counsel

## <u>NOTICE OF TRIAL COUNSEL AND DESIGNATION OF PRIMARY EMAIL ADDRESS</u>

PLEASE TAKE NOTICE that the trial counsel in this matter is Jennifer R Falcone, Bar Counsel, whose address, telephone number and primary email address are The Florida Bar, Miami Branch Office, 444 Brickell Avenue, Rivergate Plaza, Suite M-100, Miami, Florida 33131-2404, (305) 377-4445 and jfalcone@flabar.org; and nfroncko@flabar.org. Respondent need not address pleadings, correspondence, etc. in this matter to anyone other than trial counsel and to Staff Counsel, The Florida Bar, Lakeshore Plaza II, Suite 130, 1300 Concord Terrace, Sunrise, Florida 33323, aquintel@flabar.org.

## <u>MANDATORY ANSWER NOTICE</u>

RULE 3-7.6(h)(2), RULES OF DISCIPLINE, EFFECTIVE MAY 20, 2004, PROVIDES THAT A RESPONDENT SHALL ANSWER A COMPLAINT.