UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-21483-CIV-WILLIAMS

PETER M. VUJIN,

      Plaintiff,

vs.

RUSSELL W. GALBUT, *et al.*

      Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on five motions to dismiss filed by Defendants Eric J. Grabois and Eric J. Grabois P.L.; The Florida Bar, Michael Higer (the former Florida President), and Jennifer Falcone (the Bar Prosecutor); Mirador 1200 Condominium Association, Inc.; Peyton Bolin, P.L.; and Russell W. Galbut, respectively. (DE 91–94; 108). They seek to dismiss with prejudice the second amended complaint filed by *pro se* Plaintiff Peter M. Vujin, a permanently disbarred attorney[1] who seeks, in turn, leave to file a third amended complaint. (DE 140). For the reasons stated below, the motions to dismiss (DE 91–94; 108) are **GRANTED**, and the motion for leave to file a third amended complaint (DE 140) is **DENIED**.

## I.   BACKGROUND

This case arises from several state-court lawsuits between Vujin and his condominium association and from an attorney disciplinary proceeding that ultimately led to Vujin's permanent disbarment. In this case, Vujin claims to be the victim of a vast conspiracy whose members include his former condo association and individuals,

---

[1] *The Florida Bar v. Peter Milan Predrag Vujin*, No. SC17-1949 (Fla Mar. 22, 2019).

lawyers, and law firms associated with it, as well as The Florida Bar and its officers, and a Florida circuit court judge and bailiff.  The conspiracy's apparent aim is to intimidate and harass him into dropping his litigation against, and investigation into, the condo's alleged illegal activities, which allegedly include theft, fraud, and even murder.  From that premise, Vujin has invoked four Amendments from the United States Constitution, five Articles from the Florida Constitution, four sections of the United States Code, and 13 Florida Statutes. And he professes to have suffered damages that have increased, from pleading to pleading, two-fold and five-fold: from $10 million to $20 million, and then from $20 million to $100 million.

This Court dismissed, without prejudice, Vujin's "dramatic and provocative" first amended complaint based on two grounds.  (DE 83).  The first ground was that the amended complaint was a "shotgun pleading" because it was "impossible to know which allegations of fact are intended to support which claims for relief."  (DE 83 at 4).  The second ground was that the amended complaint was "rife with conclusory allegations and legal conclusions that fail to articulate a cognizable claim."  (DE 83 at 4).  The Court granted Vujin 15 days to "file a final amended complaint" that would cure these deficiencies," warning that the failure to do so "may result in dismissal of the action *with prejudice*."  (DE 83 at 4) (emphasis in original).

In the second amended complaint, Vujin alleges that Galbut, Mirador 1200, Grabois, the Grabois firm, the Peyton Bolin firm, and Ronald Wolff[2] conspired to "operate a Scheme to Defraud" and "are engaged in RICO racketing [sic]."  (DE 84 ¶ 6).  According to Vujin, the conspirators "forged and falsified" Mirador 1200's corporate books "to create

---

[2] Wolff has not been served yet.

an unenforceable debt and thereby racketeer condominium owners." (DE 84 ¶ 7).

Vujin then alleges that, in retaliation for a legal victory in state court, Galbut, Wolff, and Mirador 1200 perpetuated "a campaign of terror" against him "to intimidate and silence him." (DE 84 ¶¶ 7–8). According to Vujin, these wrongdoers "broke into" his residence; "broke the locks" to his residence; "removed" a friend of Vujin from Vujin's home "by threat of gunpoint"; "punched and struck" Vujin; "infiltrated" his "electronic communications"; "falsely reported" Vujin to police; and "forcefully pushed" him. (DE 84 ¶¶ 9, 11–12). The gun incident occurred in November 2012. (DE 84 ¶ 11). Vujin also says that Galbut "corruptly influenced" the police into not investigating Vujin's police reports. (DE 84 ¶ 10). And Vujin also tells of a separate incident, in August 2015, where Wolff forced himself into Vujin's apartment. (DE 84 ¶12).

Next, Vujin alleges that, in July 2014, Grabois, the Grabois firm, and the Peyton Bolin firm "fraudulently" reopened a state-court case "to racketeer" him and to violate his civil rights. (DE 84 ¶ 13). Vujin says that the Peyton Bolin firm "unlawfully" prosecuted that action to "silence" Vujin. (DE 84 ¶ 14).

Vujin's complaint then moves to a 2016 incident where Wolff allegedly "waited in his automobile in order to ambush" Vujin. (DE 84 ¶ 15). At which point, Vujin says, "Defendant ERIC GRABOIS or Defendant ERIC J. GRABOIS, P.L., telephoned Defendant RONALD WOLFF and advised him to hit the Plaintiff with his car to hurt Plaintiff." (DE 84 ¶ 15).

After that incident, Vujin continues, Grabois "filed a frivolous, fraudulent and invidious Florida bar complaint" against him to "intimidate and prevent [him] from the prosecution of his counterclaim in the aforementioned circuit court action." (DE 84 ¶ 16).

3

Vujin also says that Grabois lied under oath when he said that he had not reviewed Mirador 1200's accounting statements, which supposedly show that Galbut, Wolff, and Mirador 1200 "forged and doctored" debts to "fraudulently steal the condominium owners [sic] property." (DE 84 ¶ 17).

Vujin then alleges that Defendants' "fraudulent acts" caused the deaths of "Mr. Gunther and Mrs. Shelley Gould," an elderly couple who had allegedly lost their property because of Defendants' scheme. (DE 84 ¶ 19). Vujin claims that "Mr. Gould discharged his pistol into Mrs. Gould, and then himself." (DE 84 ¶ 19). Vujin says the "scheme to defraud" thus constitutes a "predicate felony for 3rd Degree Homicide." (DE 84 ¶ 20). Vujin further alleges that Defendants conspired to "prevent his investigation" into the "suspicious deaths." (DE 84 ¶ 21).

Vujin also implicates The Florida Bar, Higer, and Falcone in conspiring "to silence [him] vis-à-vis the deaths of Mr. Gunther and Mrs. Shelley Gould. . . ." (DE 84 ¶ 31). Vujin alleges that The Florida Bar engaged in a "thinly veiled persecution" of him because of his "political opinion," "persecuted sham complaints," and "threatened" or "intimidated" other attorneys from representing Vujin. (DE 84 ¶ 33). As to Higer, Vujin says that Higer "enacted and acquiesced in a widespread, customary violation of civil rights of attorneys in disciplinary proceedings," including Vujin, by having "defaults . . . entered as a matter of policy." (DE 84 ¶¶ 34, 39). But as to Falcone, Vujin alleges nothing specific, placing her instead within the conspiracy allegations. (DE 84 ¶¶ 31, 39, 62).

Vujin alleges six counts, and each included several claims against multiple parties. Count I is for "Declaration of Violation of First Amendment Right of Free Speech and Right to Petition the Government and Damages – 42 USC 1983 and 42 USC 1988," and is

against "[a]ll Defendants."  (DE 84 at 10).  Count II is for "Declaration of Violation of 42 USC 1985, 1986 and 1988 and Damages," and is against The Florida Bar, Higer, and Falcone. (DE 84 at 13).  Count III is for "Declaration of Violation of Fifth Amendment Right to Fair Trial, Eighth Amendment Prohibition Against Cruel and Unusual Punishment – 42 USC 1983, 1986, 1988," and it is against John Doe, Galbut, Grabois, the Grabois firm, the Peyton Bolin firm, Higer, The Florida Bar, Falcone, and Judge Monica Gordo. (DE 84 at 14).

Judge Gordo is included in the subheading for Count III but is mentioned nowhere else within the second amended complaint.  In the first amended complaint, Vujin had included Judge Gordo in the case's caption.  (DE 22 at 1).  Vujin also included specific allegations against her; he alleged that, to "intimidate" him and thus protect the other Defendants, Judge Gordo had entered a "non-judicial order" to an unnamed bailiff "to stalk, follow, batter and extrajudicially punish and intimidate" Vujin.  (DE 22 ¶¶ 29–30). Vujin says that the bailiff "surreptitiously, intentionally and willfully followed and battered [him] from the back by way of attempting to pull [his] jacket and shirt off. . . ." (DE 22 ¶ 30).

Count IV is for "Injunction" against The Florida Bar, Galbut, Falcone, Higer, and John Doe, and also mentions sections 1983, 1986, and 1988.  (DE 84 at 15).  Count V is simply for "Damages against all Defendants – 42 USC 1983, 1986, 1988." (DE 84 at 16). Under Count VI,[3] Vujin appears to allege a civil RICO claim—he says that the count is for "Racketering [sic]."  (DE 84 at 14).  The count's caption and its first paragraph name Galbut, Mirador 1200, Grabois, the Grabois firm, the Peyton Bolin firm, and Wolff.  (DE 84 at 14, ¶ 52).  But in another paragraph, Vujin also asks for relief against The Florida

---

[3] Vujin incorrectly labels this count "Count Five."

Bar, Higer, and Falcone.  (DE 84 ¶ 62).

As relief, Vujin asks the Court to (1) declare that Defendants have conspired to violate his civil rights; (2) enjoin Defendants from violating his civil rights; (3) award him $20 million; and (4) under Count IV, to order The Florida Bar, Galbut, Falcone, and Higer to "file a Confession of Error in the appellate proceeding now pending in front of the Supreme Court of the State of Florida."  (DE 84 ¶ 47).

In his proposed third amended complaint, Vujin makes several changes.  To begin, he resurrects the allegations against Judge Gordo (DE 140-1 ¶¶ 15, 28), but still omits her from the caption.  Also, Vujin increases his damages claim from $20 million to $100 million, without explanation.  (DE 140-1 ¶ 3).  Next, Vujin changes how he refers to two Defendants: he defines the John Doe Defendant as "SHERRIFF" and Higer as "STATE." (DE 140-1 ¶¶ 1, 4).  Moreover, Vujin uses the phrase "Defendant STATE Judge Gordo" several times. (DE 140-1 ¶¶ 15, 23–24, 28).

In another confusing use of the term "STATE," Vujin alleges that Galbut "is a major organized crime figure in Defendant STATE."  (DE 140-1 ¶ 9).  According to Vujin, Galbut was arrested for drug trafficking in 1991 but paid a friend to claim ownership of the drugs. (DE 140-1 ¶ 9).  The friend served seven years in prison, and Galbut rewarded him by making him Mirador 1200's treasurer.  (DE 140-1 ¶ 9).

Lastly, the proposed third amended complaint drops counts IV-VI.  But although Vujin removed the racketeering claim under Count VI, the third amended complaint still makes 13 references to racketeering.  (DE 140-1 ¶¶ 9, 13, 14, 16, 19, 46, 47).

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts

to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The Court's consideration is limited to the allegations presented.   *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993).   All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.   *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).   Nevertheless, while "detailed factual allegations" are unnecessary, the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).   "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'"   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In addition, unless otherwise specified, a party may amend its pleading "only with the opposing party's written consent or the court's leave."   Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave [to amend] when justice so requires."   *Id.*   But courts may deny leave to amend on numerous grounds, including the amendment's futility.   *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dept. of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1287 (11th Cir. 2003).   Futility justifies the denial of leave to amend when the complaint, as amended, would still be subject to dismissal.   *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

## III.   DISCUSSION

The Court again finds that Vujin fails to state a cause of action.   Contrary to Federal Rule of Civil Procedure 8(a), the second amended complaint lacks "a short and plain

7

statement of the claim showing that [Vujin] is entitled to relief." Fed. R. Civ. P. 8(a).  It is also the very opposite of "simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  And the second amended complaint remains an impermissible "shotgun" pleading, as the Court previously found.  *See Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Specifically, the factual allegations in the second amended complaint are arranged both as to subject matter and time without discernable order or reason.  For example, they recount alleged instances of forgery and fraud beginning in 2008 (DE 84 ¶ 7); a broad list of instances of breaking and entering, espionage, false police reporting, and assault (DE 84 ¶ 9); the repetition of the assault-at-gunpoint allegation from 2012 (DE 84 ¶ 11); another incident of breaking and entering from 2015 (DE 84 ¶ 12); the improper reopening of a lawsuit in 2014 (DE 84 ¶ 13); and a plot to hit Vujin with a car in 2016 (DE 84 ¶ 16).

Interspersed among these episodes, Vujin alleges, in a conclusory manner, that his First, Fifth, and Eighth Amendment rights, and his "civil rights" in general, have been violated.  (DE 84 ¶¶ 10, 18).  He also generously employs legal terminology throughout the complaint, at times using the terms "racketeer" and "racketeering" as all-purpose verbs and adjectives—for example, by saying that Defendants aimed to "racketeer condominium owners" and filed "fraudulent and malicious racketeering complaint[s]." (*See* DE 84 ¶¶ 6–7, 13, 21, 35, 37).  But he fails to articulate how any of the facts alleged support a claim for violation of his First, Fifth and Eighth amendment rights.

In other words, Vujin presents nothing more than "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts," *Davila*, 326

F.3d at 1185.  Consequently, Vujin's "lengthy, convoluted, incomprehensible pleading must again be dismissed as an impermissible shotgun pleading" because the allegations remain "disjointed, meandering, often redundant, and not clearly connected to any particular causes of action."  *Barone v. Wells Fargo Bank, N.A.*, No. 16-60960-CIV, 2018 WL 1899287, at \*2 (S.D. Fla. Feb. 12, 2018), aff'd, 757 F. App'x 877 (11th Cir. 2018), cert. denied, No. 18-1392, 2019 WL 1993075 (U.S. June 17, 2019).

Consonant with the decision in *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018), the Court granted Vujin—who, although disbarred, has a law degree—one more chance to properly amend his pleading.  Vujin failed to do so.  Indeed, the resulting pleading is even more confounding.  While emphasizing the dramatic (Vujin now accuses Galbut of being in organized crime), Vujin has abandoned clarity to the point that the Court often does not know which Defendant Vujin is describing and for what conduct.  For instance, Vujin defines "STATE" as referring to Higer, but Vujin also refers to Judge Gordo as "Defendant STATE Judge Gordo"; and in another paragraph he writes that Galbut "is a major organized crime figure in Defendant STATE."  (DE 140-1 ¶ 1, 4, 9, 15, 23–24, 29).  These inconsistent characterizations cannot be reconciled or understood in the context of a cognizable claim.

The cameo appearances by Judge Gordo as a "Defendant" presents yet another example of the pleadings' confusing nature.  In the second amended complaint, Vujin dropped the allegations that Judge Gordo had ordered a bailiff to, essentially, beat him up.  (DE 22 ¶¶ 29–30).  Indeed, Judge Gordo is no longer mentioned in the caption, an omission which would normally signal that Vujin has given up the claims against her.  But in the third amended complaint, Vujin revives the allegations against Judge Gordo (DE

140-1 ¶¶ 15, 28), even though the caption does not name her.  And in a similar vein, even though Vujin removed the racketeering claim (Count VI), the third amended complaint still mentions racketeering 13 times.  (DE 140-1 ¶¶ 9, 13, 14, 16, 19, 46, 47).

In short, Vujin has failed to clearly set forth cognizable legal claims, the elements of those claims, and has failed to identify the defendants liable in each instance. Defendants' motions and the Court's prior order fully explained the deficiencies in Vujin's pleading and, yet, Vujin has failed to correct them in his second amended complaint and in his proposed third amended complaint.  As such, granting leave to amend is futile because the third amended complaint also would be dismissed.  *Burger King*, 169 F.3d at 1320.   Therefore, after careful consideration, the Court finds that dismissal with prejudice is warranted because Vujin has failed to comply with a Court order, *see Jackson* 898 F.3d at 1358, and because any further amendment would be futile, *see Burger King*, 169 F.3d at 1320.[4]

## IV.   CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that

1.      The motions to dismiss (DE 91–94; 108) are **GRANTED**.

2.      The second amended complaint (DE 84) is **DISMISSED WITH PREJUDICE**.

3.      The motion for leave to file a third amended complaint (DE 140) is **DENIED**.

---

[4] Given these rulings, the Court need not address the remaining grounds for dismissal. But many of those grounds would also present insurmountable legal obstacles to Vujin's claims.  For instance, the theory that Galbut is a "state actor" because he "entered into preliminary negotiations with . . . Chief Judge Soto . . . to build a new Miami-Dade Courthouse" (DE 84 ¶ 18) does not pass muster.  Moreover, the claims he raises inevitably trigger intractable problems concerning litigation immunity, as well as the *Colorado River* and *Rooker-Feldman* doctrines.

4.     All other motions are **DENIED AS MOOT**.

5.     The Clerk of the Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida, this _____ day of July 2019.


KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE